# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANN LUTNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1292-PRW |
| | ) | |
| STATE OF OKLAHOMA, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ANN LUTNES and SETH McKEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1353-PRW |
| | ) | |
| OKLAHOMA DEPARTMENT OF | ) | |
| HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court are the Motions to Dismiss (Case No. 25-1292, Dkts. 13, 15, 17, 20, 22, 25, 60, 61 and 64; Case No. 25-1353, Dkts. 16, 17, and 20) filed by a multitude of Defendants. The Motions to Dismiss in Case No. 25-1292 seek to dismiss the Complaint filed by Plaintiff Ann Lutnes on March 11, 2026. The Motions to Dismiss in Case No. 25-1353 seeks to dismiss the Complaint filed by Plaintiffs Lutnes and Seth Mckee on

1

November 14, 2025. For the reasons that follow, the Court **CONSOLIDATES** these cases, **DISMISSES** the Complaints (Case No. 25-1292, Dkt. 69; Case No. 25-1353, Dkt. 1) **WITHOUT PREJUDICE**, and **DENIES** the motions **AS MOOT**.

### *Background*

Each of these cases contain several common characteristics. These are civil rights actions, brought under 42 U.S.C. § 1983, challenging the same child custody proceedings in Oklahoma state court. According to the Complaints, Defendants have each contributed to unconstitutional interference by the Oklahoma Department of Human Services (DHS) with Plaintiffs' constitutionally protected parental rights. Plaintiffs allege similar Fourth and Fourteenth Amendment violations in both Complaints, in addition to various violations of state and federal law. Accordingly, pursuant to Federal Rule of Civil Procedure 42(a), the Court consolidates the above-captioned cases, as they "involve a common question of law or fact[.]"

### I.     The Facts

Plaintiffs Lutnes and McKee are the biological parents of minor children M.R.L. and M.L.-M. The Complaints are hard to decipher, but as best the Court can tell, between April 1, 2025, and April 7, 2025, Plaintiffs took M.L.-M. to the University of Oklahoma Children's Hospital for unspecified reasons. At that appointment, Plaintiffs allege that OU Children's did not "diagnose" any neglect.[1] Plaintiff also alleged that Defendants Dr. Mary Stockett and Dr. Garrett Jones "authored unverified medical reports that triggered DHS

---

[1] Compl. (No. 25-1353, Dkt. 1), ¶17.

intervention."[2] Following the hospital visit, DHS was apparently provided a "near-death" referral by an unspecified party[3] and opened an administrative review of some sort on April 7, 2025. Plaintiffs do not provide any details on the "near-death" referral. Plaintiffs allege that on April 18, 2025, before DHS had completed its administrative review, Defendant Brenda Nipp, who served as an assistant district attorney, presumably for Payne County, filed a deprivation petition, which included an affidavit that Plaintiffs allege was unsigned, unsworn, and riddled with hearsay. Using the language of the deprivation petition, a sheriff's deputy (presumably, Defendant Officer John Kuhn) filed "a probable-cause affidavit for arrest," which Special Judge Susan Worthington then issued.[4] Lutnes was jailed on April 26, 2025.

On April 18, 2025, Judge Worthington entered an emergency order that apparently affected Plaintiffs' custody of the children, but Plaintiffs do not explain in what way the legal guardianship of their children was altered, nor for that matter to which children the emergency order applied (though it appears that the emergency order may have delegated custody to DHS of one or both of the children). According to Plaintiffs, Defendant Elizabeth Henninger, a Payne County DHS worker, "certified the order as if probable cause existed."[5] While it is not clear what that means, Plaintiffs allege that this violated

---

[2] Compl. (No. 25-1292, Dkt. 69), ¶10.

[3] This may be referring to the medical report authored by Dr. Stockett and Jones.

[4] Compl. (No. 25-1292, Dkt. 69), ¶¶7–8.

[5] *Id.* at ¶4.

Oklahoma law, asserting that unspecified parties violated 12 O.S. § 611 and "Rule 52(a)."[6] Plaintiffs further aver that they were not provided a 48-hour probable cause hearing transcript, presumably from a hearing related to the emergency custody order.

On April 22, some sort of "Show-Cause Hearing" was held.[7] What happened at that hearing is not stated. Sometime afterwards Nipp and another assistant district attorney, Defendant Laura Austin Thomas, allegedly filed "motions to bypass reunification and terminate rights without new evidence."[8] Plaintiffs allege DHS completed its administrative review of the deprivation petition on April 28, 2025.

Plaintiffs allege that throughout these custody proceedings their court-appointed counsel, Defendant Carter Jennings, colluded with Nipp and DHS staff. In particular, Plaintiffs allege that Jennings met privately with and forwarded client emails to Nipp and DHS staff without Plaintiffs' consent. Plaintiffs claim "[t]hese acts constitute joint state action under *Tower v. Glover*, 467 U.S. 914 (1984)."[9]

Plaintiffs also allege that on May 14, 2025, an unspecified court delegated visitation authority to DHS without making any findings.

Plaintiffs then allege that at some unspecified time, medical records indicate that a corrective eye surgery was scheduled for M.L.-M. Plaintiffs claim that records incorrectly indicate that Plaintiffs were notified of the scheduled surgery. Plaintiffs allege that DHS

---

[6] Compl. (No. 25-1353, Dkt. 1), ¶23.

[7] Compl. (No. 25-1292, Dkt. 69), ¶5.

[8] *Id.* at ¶9.

[9] *Id.* at ¶14.

misled them for months about scheduled medical procedures for their children and promised to alert Plaintiffs if any surgeries were ultimately scheduled. Plaintiffs allege that DHS eventually approved and transported M.L.-M. for corrective eye surgery at an unspecified time to an unspecified place without Plaintiffs first providing their consent. Here, Plaintiffs claim a Fourth Amendment violation and Fourteenth Amendment violations against their parental autonomy.

The Court then construes the Complaints to allege that after the eye surgery, at a visitation at an unspecified time and place, an unnamed DHS worker demanded that Plaintiffs sign a consent form that Plaintiffs claim retroactively authorized DHS's unspecified prior medical decisions made on behalf of unspecified children. During this episode, Plaintiffs allege the DHS worker threatened that Plaintiffs would not see their children that day if they did not sign the consent form, which Plaintiffs now challenge as void because they signed it under duress.

Plaintiffs then attempted to file a notice of constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1, presumably with the Payne County Clerk of Court, but the Plaintiffs claim the Clerk either refused or failed to certify that Plaintiffs had provided the requisite notice to an unspecified employee of the Oklahoma Attorney General. The Plaintiffs claim the Clerk violated their right to constitutional review, as protected by Article IV, Section 1 of the Constitution. Plaintiffs do not allege when they attempted to file such notice, nor which law's constitutionality they were challenging such as to trigger Rule 5.1's notice requirement.

Plaintiffs submitted a "complete grievance" to the Oklahoma Bar Association at an unspecified time and against unspecified parties, the contents of which Plaintiffs do not detail in the Complaint.[10] Plaintiffs claim that they received read receipts from the OBA that the grievance was delivered, but the OBA has not acknowledged, docketed, or taken any other action with respect to the grievance, which Plaintiffs allege is state inaction affecting their constitutional rights.

Finally, to make an already confusing story more confusing, the Complaint (Case No. 25-1292, Dkt. 69) names Defendants Caitlin Fishburn, Michelle Burdick, Steven Hickey, Hilary Vaughn, Chanda Smith, John Smith, and Angela D. Mainka, and Sherry Debord without specifying how they are connected to the custody proceedings or any wrongdoing. It is unclear to the Court how these defendants contributed to Plaintiffs' alleged injury.

## II.    Causes of Action

### A.    Complaint (Case No. 25-1292)

On October 30, 2025, Plaintiff Lutnes, individually and as next friend of minor children M.R.L. and M.N.L.-M., filed a Complaint against Defendants State of Oklahoma, Oklahoma DHS, Dr. Stockett, Dr. Jones, Fishburn, Henninger, Hickey, Burdick, Vaughn, the Smiths, Mainka, Debord, Judge Worthington, Thomas, Nipp, Jennings, Officer Kuhn, Payne County Sheriff's Office, and Payne County Juvenile Court.

---

[10] Compl. (No. 25-1353, Dkt. 1), ¶36.

Lutnes seeks (1) a declaration stating all removal and custody orders are void for lack of jurisdiction, (2) an injunction enjoining adoption proceedings or termination actions, (3) an order forcing DHS, the DA's Office, and court personnel to comply with the Interstate Compact on the Placement of Children, Title IV-E of the Social Security Act, and the Constitution, (4) an award of compensatory and punitive damages, and attorney's fees under 42 U.S.C. § 1988, and (5) any other relief this Court deems just and proper.

All Defendants, except Burdick, Fishburn, Henninger, Hickey, Vaughn, Mainka, and the Payne County Juvenile Court, have filed motions to dismiss this action under Rule 12(b)(6).

### B.    Complaint (Case No. 25-1353)

On November 14, 2025, Lutnes, now joined by McKee, filed a new complaint against the Payne County Director of DHS, Nipp, Judge Worthington, the Payne County Court Clerk, and the Chief Disciplinary Officer of the Oklahoma Bar Association.

Plaintiffs seek an injunction asking this Court to (1) order DHS to cease "all custody actions," "freeze all medical decision-making," and "order complete medical disclosure," (2) "void coerced signatures," and (3) order "clerk compliance," "OBA compliance," and "ongoing court oversight."[11] Plaintiffs further request unspecified declaratory and compensatory relief, as well as fees under 42 U.S.C. § 1988.

---

[11] *Id.* at 5–6.

Defendants Judge Worthington, Nipp, and the Chief Disciplinary Officer of the OBA each filed motions to dismiss this action under Rules 12(b)(1) and (6). Defendant Nipp also moves to dismiss under Rule 8(a)(2).

### *Standard of Review*

Federal Rule of Civil Procedure 8(a)(2) requires that, "[t]hough a complaint need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'"[12] A district court may dismiss a complaint under Rule 41(b) if it fails to comply with Rule 8.[13] Dismissal under Rule 41(b) may be done with or without prejudice.[14]

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[15] Courts should not, however, "assume the role of advocate for the pro se litigant.[16] And the broad construction of a pro se plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."[17] Because a pro se plaintiff "requires no special legal training to recount the facts surrounding his alleged injury," his pro se

---

[12] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570) (2007)).

[13] *Nasious v. Two Unknown B.I.C.E. Agents*, *at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).

[14] *Id.* at 1162.

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

[16] *Id.*

[17] *Id.*

status does not overcome the rule that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[18]

Plaintiffs are not required to set forth a prima facie case in their complaint.[19] Plaintiffs are, however, required to set forth plausible claims, so in determining whether a claim is plausible, the elements of a prima facie case are helpful.[20]

*Analysis*

**I. The State of Oklahoma and Oklahoma Department of Human Services are protected by sovereign immunity.**

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."[21] As the party asserting jurisdiction, Plaintiffs "bears the burden of proving that sovereign immunity has been waived."[22] Exceptions to Eleventh Amendment immunity exist where a state consents to suit in federal court or where Congress has abrogated a state's sovereign immunity.[23] Oklahoma has not

---

[18] *Id.* (citations omitted).

[19] *Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[20] *Id.* at 1192; *see Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1054 (10th Cir. 2020); *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015).

[21] *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (internal quotation marks and citations omitted).

[22] *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1244 (10th Cir. 2012) (internal quotation marks and alteration omitted).

[23] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

consented to suit in federal court,[24] and Section 1983 does not abrogate the State's sovereign immunity.[25]

Because the Tenth Circuit and federal district courts in Oklahoma have held that the Department of Human Services is an arm of the state, and Lutnes does not argue otherwise, the Court finds that the Department of Human Services is entitled to sovereign immunity under the Eleventh Amendment.[26] As mentioned above, Lutnes seeks injunctive relief. And while *Ex Parte Young* permits a plaintiff to pursue prospective equitable relief against an official of a state agency, "it has no application against the States and their agencies, which are immune from suit regardless of the relief sought."[27] Accordingly Lutnes's Section 1983

---

[24] OKLA. STAT. tit. 51, § 152.1(B) ("[I]t is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.").

[25] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–66 (1989).

[26] *See, e.g.*, *McKinney v. State of Okla., Dep't of Hum. Servs., Shawnee OK*, 925 F.2d 363, 365 (10th Cir. 1991) ("[T]he eleventh amendment bars [the] plaintiff from seeking money damages against the Oklahoma Department of Human Services."); *Luther v. Okla. ex rel. Okla. Dep't of Hum. Servs.*, No. CIV-25-279-J, 2025 WL 1165282, at *4 (W.D. Okla. Apr. 2, 2025); *Miller v. Okla. Dep't of Hum. Servs.*, No. CIV-22-507-D, 2022 WL 16541217, at *2 (W.D. Okla. Oct. 28, 2022) (collecting cases).

[27] *Romero v. City & Cnty. of Denver Dep't of Soc. Servs.*, 57 F. App'x 835, 838 (10th Cir. 2003) (cleaned up) (collecting cases).

claims against the State of Oklahoma and its Department of Human Services are dismissed without prejudice.[28]

## II.    For the remaining Defendants, Plaintiffs' Complaints violate Rule 8(a)(2) and are also dismissed without prejudice.

"[T]o state a claim in federal court, a complaint must explain what each defendant did to [the plaintiffs]; when the defendant did it; how the defendant's action harmed [the plaintiffs]; and, what specific legal right the plaintiff believes the defendant violated."[29] To determine whether a complaint satisfies Rule 8(a)(2), "[t]he law recognizes a significant difference between notice pleading and 'shotgun' pleading."[30] A shotgun pleading "is a type of pleading that contains several counts or causes of action, each of which incorporates by reference the entirety of its predecessor." In other words, the shotgun pleader fails to connect facts to its corresponding claim. Neither the Court nor the Defendants are required to piece together Plaintiffs' arguments for them.[31]

Here, both Complaints are classic examples of shotgun pleadings. Plaintiffs' noncompliance with Rule 8 produces three defects warranting dismissal: it precludes any analysis into abstention, results in overbroad and indeterminate requests for injunctive

---

[28] *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) (Dismissal under sovereign immunity grounds must be without prejudice.).

[29] *Nasious*, 492 F.3d at 1163.

[30] *Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989).

[31] *Hart v. Salois*, 605 Fed. App'x 694, 701 (10th Cir. 2015).

relief, and obscures the nature of Plaintiffs' claims by failing to tie specific facts to specific causes of action.

First, before the Court can assess whether any of Defendants' numerous asserted defenses apply in this case, or even if it should abstain under *Younger v. Harris* or another such abstention doctrine,[32] the Court must understand what Plaintiffs are alleging each Defendant did. The muddled Complaints make that task impossible. As the Court repeatedly notes in its summary of the facts from the Complaint, Plaintiffs exclude important details about the time, place, and even identities of perpetrators of key events.

Defendants raise defenses based on a variety of immunity doctrines and urge the Court to abstain from intervening in state court proceedings, but the application of the asserted immunity defenses, such as qualified or absolute immunity, require fact-specific analyses. For instance, state prosecutors enjoy absolute immunity against "§ 1983 [actions] for activities intimately associated with the judicial process."[33] State judges are likewise absolutely immune from such actions.[34] Qualified immunity, too, applies when a plaintiff demonstrates a defendant violated one of the plaintiff's constitutional rights and that right was "clearly established" when the violation allegedly occurred such that all reasonable officials would have been on notice that their actions violated the law.[35] The Complaints

---

[32] *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

[33] *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (quoting *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1489 (10th Cir. 1991)) (internal quotations omitted).

[34] *Dennis v. Sparks*, 449 U.S. 24, 27 (quoting *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 734–35 (1980)).

[35] *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012)

fail to provide the Court with any basis to assess Defendants' liability and defenses. For example, in Case No. 25-1353, Plaintiffs name Judge Worthington as a Defendant in the case caption and assert she is sued only for "administrative acts outside judicial immunity[,]"[36] but the Complaint does not state which court performed each of the judicial actions recounted. Plaintiffs cannot evade an immunity doctrine by simply pleading vague facts and declaring that any such immunity does not apply.

Of special note is the extent to which the Court is still left in the dark on what seems to be the most important issue underlying the whole case—the custody order. The Court doesn't know whether the emergency order altering the children's legal guardianship has been superseded by a separate order, to which children any such order applies, who has custody of the children, whether any custody order is still in effect, or the basis for the emergency that necessitated the order.  All to say, the Complaints simply do not provide "the [C]ourt sufficient clarity to adjudicate the merits."[37]

Second, Plaintiffs' requests for injunctive relief are similarly too vague. Rule 65(d) requires that injunctions be "specific in terms" and describe the acts to be restrained or compelled "in reasonable detail[.]"[38] Here, Plaintiffs seek exceptionally broad remedies. They ask the Court to (1) order DHS to "cease exercising custody without court findings," "disclose all medical records within 72 hours," and enjoin it from "authorizing medical procedures[;]" (2) order an unspecified "Clerk to certify Rule 5.1 notice"—about which

---

[36] Compl. (No. 25-1353, Dkt. 1), ¶14.

[37] *Nasious*, 492 F.3d at 1163 (internal citations omitted).

[38] *Monreal v. Potter*, 367 F.3d 1224, 1236 (quoting Fed. R. Civ. P. 65(d)).

13

the Court has been provided no details—to an unspecified attorney general; and (3) order the Oklahoma Bar Association "to process grievances," and perform "immediate compliance reporting" of an unspecified nature.[39] Plaintiffs also request that the Court "[e]join further adoption or termination actions until due process is restored" and "[o]rder DHS, DA's Officer, and court personnel to comply with ICPC, Title IV-E, and constitutional requirement."[40] Such bald requests are simply insufficient.

As a first matter, injunctions ordering Defendants "to obey the law and prohibiting [] Defendant[s] from violating it are impermissible."[41] Second, Plaintiffs ask the Court to enjoin DHS from doing some things and to do other things, but Plaintiffs do not specify as to whom the injunction should apply. Indeed, the Complaint in Case No. 25-1353 reads as though Plaintiffs are asking the Court, for instance, to order DHS to cease *all* custody actions in the state of Oklahoma as to *all* children, which would of course exceed the Court's authority.[42] Additionally, the only DHS official named in the Complaint in Case No. 25-1353 is the director of the Payne County office. The Court cannot enjoin the Payne

---

[39] Memo (No. 25-1353, Dkt. 2), at 6.

[40] Compl. (No. 25-1292, Dkt. 69), at 4.

[41] *VerSteeg v. Bennett, Deloney & Noyes, P.C.*, Case No. 08-CV-153-B, 2009 WL 10670543, at *2 (D.Wyo. Feb. 19, 2009) (internal citations omitted).

[42] "It is well settled [that] an injunction must be narrowly tailored to remedy the harm shown." *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 752 (10th Cir. 2011) (quoting *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002)) (internal quotations omitted).

County director in an effort to cease all custody actions throughout Oklahoma. Plaintiffs must connect each request for injunctive relief to a specific Defendant.[43]

Third, the Complaints require the Court and Defendants to guess which causes of action Plaintiffs intend to assert. Although each Complaint includes a section labeled "Causes of Action," both also scatter additional statutory and constitutional references throughout without clearly identifying them as distinct claims.[44] Accepting such pleadings would force the Court to speculate as to the nature and scope of Plaintiffs' claims—an approach that is both unfair to Defendants, who cannot reasonably respond, and makes the Court's job of adjudicating the case and these motions all but impossible.

### III.    An amended complaint must cure the deficiencies identified in this Order.

Plaintiffs' pleadings need not be perfect, but they must adequately put Defendants on notice on what unlawful acts each of them is alleged to have done, what claims are asserted against each of them, and what relief is sought from each of them. The Court has put Plaintiffs on notice of the Complaints' deficiencies, such that failure to cure the deficiencies in an amended complaint would likely warrant dismissal without leave to further amend.[45] Plaintiffs must ensure their complaint sufficiently states a claim and otherwise complies with the Court's Local Rules and the Federal Rules of Civil Procedure,

---

[43] *See* Fed. R. Civ. P. 65(d)(2).

[44] *E.g.*, Compl. (No. 25-1353, Dkt. 1-2), at 1 (referencing compelled speech).

[45] *Nasious*, 492 F.3d at 1163 (noting that the culpability of a pro se party in not complying with pleading requirements increases with the helpfulness and clarity a district court provides in explaining the requirements of a well-pleaded complaint before a pro se party amends his complaint).

both of which can be accessed for free online. Also, new complaints supersede old complaints.[46] This means that if Plaintiffs filed an amended complaint, the Court will not consider anything included in the original Complaints.

Plaintiffs must also be aware that abstention under *Rooker-Feldman*, *Younger*, or both doctrines might preclude the Court from exercising jurisdiction over this case, based on the allegations within the four corners of the Complaints and arguments found within many of the Defendants' motions to dismiss. The *Rooker-Feldman* doctrine prevents this Court "from hearing cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before [these federal proceedings] commenced and inviting [this Court's] review and rejection of those judgments."[47]

Under *Younger*, this Court may abstain from exercising jurisdiction if "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."[48]

To the extent Plaintiffs' claims arise from or relate to state-court proceedings, Plaintiffs should include sufficient factual detail regarding those proceedings, including

---

[46] *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (internal citations omitted).

[47] *Velasquez v. Utah*, 775 Fed. Appx. 420, 422 (10th Cir. 2019) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284) (internal quotations omitted)).

[48] *Amanatullah v. Colorado Bd. of Medical Examiners*, 187 F.3d 1160, 1162 (10th Cir. 1999) (citing *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)) (internal quotations omitted).

their status and nature, to allow the Court to assess whether jurisdictional or abstention doctrines may apply. Plaintiffs are not required to anticipate defenses, but the amended complaint must contain sufficient facts for the Court to evaluate its jurisdiction.

As to the second prong of *Younger*, Plaintiffs at this stage need only to allege plausible facts related to the inadequacy of the state fora. An inadequate state forum is not one that simply produces a result Plaintiffs find dissatisfying.[49] Unless state law absolutely bars Plaintiffs from injecting their federal claims into the action, Plaintiffs likely will have an adequate opportunity to raise those federal claims in state court.[50] And as a reminder to Plaintiffs, state courts are generally able to hear federal claims and claims which elicit defenses grounded in federal law, whether raised under federal law or the Constitution.[51] Further, conclusory allegations that state court judges are all complicit in conspiracies to deprive Plaintiffs of their rights must include specific, plausible allegations demonstrating the absence of any adequate state court forum.[52]

### *Conclusion*

Because the Complaints do not satisfy Rule 8(a), the Court **DISMISSES** the Complaints (Case No. 25-1292, Dkt. 69; Case No. 25-1353, Dkt. 1) **WITHOUT**

---

[49] *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019).

[50] *Id.* (quoting *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

[51] *Tafflin v. Levitt*, 493 U.S. 455, 458–59 (1990) (collecting cases and noting that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.").

[52] *See Dorman v. Bradshaw*, Case No. CIV-26-225-PRW, 2026 WL 964009, at *4 (W.D. Okla. Apr. 9, 2026).

**PREJUDICE.**[53] Further, all pending motions in Case Nos. 25-1353 and 25-1292 are **DENIED AS MOOT** and the cases (Nos. 25-1292 and 25-1353) are **CONSOLIDATED**. The Clerk is directed to terminate Case No. 25-1353. All parties are directed to submit future filings in Case No. 25-1292.

The Court will permit Plaintiffs to file a motion—on or before May 25, 2026—for leave to amend their Complaints to comply with Rule 8 of the Federal Rules of Civil Procedure and file one amended complaint in Case No. 25-1292. Should Plaintiffs fail to timely seek leave to amend or fail to follow the applicable Federal or Local Rules of Civil Procedure, a judgment will be entered in favor of the Defendants.

**IT IS SO ORDERED** this 4th day of May 2026.

_____

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[53] *See* Fed. R. Civ. P. 41(b); *Nasious*, 492 F.3d at 1162 ("Employing Rule 41(b) to dismiss a case without prejudice for failure to comply with Rule 8 of course allows the plaintiff another go at trimming the verbiage; accordingly, a district court may, without abusing its discretion, enter such an order without attention to any particular procedures.").