**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ANN LUTNES and SETH MCKEE,<br><br>Plaintiffs,<br>v.<br><br>OKLAHOMA, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-25-1292-PRW |

## ORDER

Before the Court is Plaintiffs' Motion for Leave to File an Amended Complaint (Dkt. 94), Proposed Amended Complaint (Dkt. 94-1), and Revised Proposed Amended Complaint (Dkt. 96-1). Also before the Court is Defendant John Simth and Chanda Smith's Response (Dkt. 101), requesting an award of attorney's fees under § 1988(b), and Motion to Impose Pre-Filing Restrictions on Plaintiffs (Dkt. 102). For the following reasons, the Court **DENIES** Plaintiffs' Motion for Leave to File an Amended Complaint (Dkt. 94), **DENIES** without prejudice Defendants John and Chanda Smith's requests for attorney's fees (Dkts. 101, 102), and **DENIES** without prejudice Defendants John Smith and Chanda Smith's Motion to Impose Pre-Filing Restrictions on Plaintiffs (Dkt. 102).

### *Background*

***Plaintiffs' factual allegations.*** This is a civil rights action under § 1983 arising out of the removal of Plaintiffs' child by Oklahoma state authorities. As best the Court can tell, Plaintiffs took their child to the Children's Hospital at Oklahoma University Medical Center, where Dr. Mary Ellen Stockett "provided assessments, information, reports,

conclusions, or opinions"[1] to unknown persons, which "became part of the [Department of Human Services ("DHS")], law-enforcement, and prosecutorial narrative"[2] used to justify the removal of their children. They allege that the removal and related "custody restrictions occurred without constitutionally adequate process," in that it occurred "without a warrant or prior judicial authorization and lack of exigent circumstances" and without providing Plaintiffs a "meaningful opportunity to contest the factual basis before deprivation" or any "individualized findings sufficient to justify the deprivation."[3]

Following the removal of their child, Plaintiffs allege that a litany of state and non-state actors were involved in "continued separation, prosecution, visitation restrictions, communication restrictions, filing restrictions, court-record issues, discovery and preservation problems, and ongoing deprivation structures involving their children and family integrity."[4] These "deprivation structures" involved "overlapping conduct between DHS actors, medical actors, law-enforcement actors, prosecutorial actors, court-record actors, private-placement actors, and other institutional actors."[5] At some point, certain Defendants "advanced criminal charges" against one or both Plaintiffs.[6] The state-court proceedings arising out of these child-custody and criminal proceedings appear to be

[1] Proposed Am. Compl. (Dkt. 94-1) ¶ 350.

[2] *Id.* ¶ 102.

[3] *Id.* ¶¶ 110–11.

[4] *Id.* ¶ 2.

[5] *Id.* ¶ 6.

[6] *Id.* ¶ 128.

ongoing, as Plaintiffs allege that the "challenged restrictions, preservation issues, records structures, and deprivation-related proceedings continue to affect their rights."[7]

***Procedural history.*** Plaintiff Ann Lutnes filed this action on October 30, 2025. On November 14, 2025, Plaintiffs filed a separate action in Case No. 25-1353. The allegations of the Complaints in both actions are recounted at length in this Court's May 4, 2026 Order, in which the Court consolidated the actions and dismissed both Complaints.[8]

The Court made several determinations in support of dismissing the Complaints. First, the Court determined that the State of Oklahoma and the Department of Human Services, which Plaintiffs named as Defendants, are protected by sovereign immunity.[9] Second, the Court determined that the claims against the remaining Defendants should be dismissed under Federal Rule of Civil Procedure 8(a), which requires a complaint to provide "fair notice of what the…claim[s] [are] and the grounds upon which [they] rest[]."[10] Overall, the Court concluded that "three defects warrant[ed] dismissal" under Rule 8(a): Plaintiffs' Complaints (1) precluded any analysis into abstention, (2) made overbroad and indeterminate requests for injunctive relief, and (3) failed to "tie specific facts to specific causes of action."[11]

---

[7] *Id.* ¶ 196.

[8] May 4, 2026 Order (Dkt. 91), at 2.

[9] *Id.* at 9–10.

[10] *Id.* at 8, 11 (citing *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018)).

[11] *Id.* at 11–12.

The Court explained that the Complaints "exclude[d] important details about the time, place, and even identities of perpetrators of key events," making it "impossible" to "understand what Plaintiffs [were] alleging each Defendant did" or assess Defendants' various immunity defenses or the applicability of abstention doctrines.[12] As to Plaintiffs' legal claims, the Complaints' "scatter[ed]…statutory and constitutional references throughout without clearly identifying them as distinct claims," "requir[ing] the Court to guess which causes of action" they asserted against which Defendants and "speculate as to the nature and scope of" their claims.[13] Similarly, while Rule 65(d) requires injunctions to be "specific in terms" and describe the acts to be restrained or compelled in "reasonable detail," Plaintiffs sought "exceptionally broad remedies," such as an order that could be read as requiring DHS "to cease *all* custody actions…as to *all* children."[14]

The Court directed Plaintiffs to cure the deficiencies in their Complaints. It stated that Plaintiffs must "adequately put Defendants on notice on what unlawful acts each of them is alleged to have done, what claims are asserted against each of them, and what relief is sought from each of them"; "connect each request for injunctive relief to a specific Defendant"; and "include sufficient factual detail" regarding relevant state-court proceedings, "including their status and nature, to allow the Court to assess whether jurisdictional or abstention doctrines may apply."[15] Additionally, since the Court's Order

[12] *Id.* at 12–13.

[13] *Id.* at 15.

[14] *Id.* at 13–14 (emphases in original) (citing Fed. R. Civ. P. 65(d)).

[15] *Id.* at 15–17.

"put Plaintiffs on notice of the Complaints' deficiencies," it warned that "failure to cure the deficiencies…would likely warrant dismissal without leave to further amend."[16]

Plaintiffs filed the instant Motion (Dkt. 94) and Proposed Amended Complaint (Dkt. 94-1) on May 26, 2026. As discussed below, Plaintiffs also filed a "Revised Proposed Amended Complaint" (Dkt. 96-1) on May 29, 2026, which the Court construes as a supplement to the Proposed Amended Complaint. Defendants Brenda Nipp, Laura Austin Thomas, Chanda Smith, John Smith, OU Medicine, Inc., and Mary Stockett all filed Responses to the Motion (Dkts 99, 101, 103). Plaintiffs filed a Reply (Dkt. 105) to these Defendants' Responses. Subsequently, Defendants Carter Jennings, John Kuhn, and Payne County Sheriff's Office filed Responses (Dkts. 106, 107). Plaintiff did not file another Reply. Defendants John Smith and Chanda Smith also filed a Motion (Dkt. 102) asking the Court to impose pre-filing restrictions on Plaintiffs, to which Plaintiffs filed a Response (Dkt. 104).

In large part, Defendants argue that the Court should not grant the Motion because Plaintiffs' Proposed Amended Complaint failed to cure the deficiencies identified in the Court's May 4, 2026 Order. In their Response (Dkt. 101), Defendants John Smith and Chanda Smith have also requested prevailing party attorney's fees pursuant to 42 U.S.C. § 1988(b).[17]

---

[16] *Id.* at 15 (citing *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007)).

[17] Several Defendants also request dismissal of this action without further leave to amend. *See* Responses (Dkts. 99, 106). Because the Court previously dismissed Plaintiffs'

### *Standard of Review*

Federal Rule of Civil Procedure 8(a)(2) requires that, "[t]hough a complaint need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'"[18]

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[19] Courts should not, however, "assume the role of advocate for the pro se litigant.[20] And the broad construction of a pro se plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."[21] Because a pro se plaintiff "requires no special legal training to recount the facts surrounding his alleged injury," his pro se status does not overcome the rule that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[22]

### *Analysis*

The Court concludes that Plaintiffs have failed to cure the deficiencies identified in its May 4, 2026 Order, and denial of further leave to amend is warranted.

## I. The Proposed Amended Complaint

---

Complaints without prejudice, *see* May 4, 2026 Order (Dkt. 91), and now denies Plaintiffs' Motion for Leave to Amend (Dkt. 94), no further dismissal is necessary.

[18] *Warnick*, 895 F.3d at 751 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[19] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

[20] *Id.*

[21] *Id.*

[22] *Id.* (citations omitted).

Plaintiffs' 76-page-long Proposed Amended Complaint names 31 individuals and entities as Defendants, as well as 20 John Does. It states that the "[j]udicial Defendants are sued only for declaratory and prospective injunctive relief to the extent permitted by 42 U.S.C. § 1983"; the "[p]rosecutorial Defendants are sued for declaratory and prospective relief and for damages only to the extent their conduct was investigative, administrative, supervisory, retaliatory, or otherwise outside absolute prosecutorial immunity"; the "[p]rivate Defendants are sued only to the extent they acted jointly with, under the direction of, in coordination with, or through delegated authority from state actors"; and the "[e]ntity Defendants are sued only under the applicable standards governing municipal liability, institutional liability, prospective relief, or joint participation as specifically pled" in the Proposed Amended Complaint.[23] The "John Does" are alleged to be "presently unidentified deputies, booking officers, dispatch personnel, evidence custodians, court personnel, DHS personnel, medical personnel," and others "whose identities and precise conduct remain unknown pending discovery."[24]

For each Defendant, Plaintiffs include "Defendant-specific allegations" that vaguely allege most of the 31 Defendants' "involvement" or "participation" in certain events and proceedings, a list of constitutional rights "implicated," and requests for various forms of relief "to the extent" they are allowed by law. For instance, Plaintiffs allege that "Defendant Judge Jill Ochs presided over proceedings" involving Plaintiffs and "imposed or

[23] Proposed Am. Compl. (Dkt. 94-1), at 1–2.

[24] *Id.* ¶ 87.

maintained filing restrictions, limited threshold motion sequencing, denied recusal-related relief, denied reconsideration, and controlled discovery and preservation disputes in a manner that impaired Plaintiffs' ability to challenge continuing deprivation before merits adjudication."[25] They allege that the "constitutional rights implicated include Fourteenth Amendment due process, meaningful court access, neutral adjudication, ADA-related court access, familial association, and preservation of objections."[26] They request "declaratory and prospective injunctive relief . . . to the extent permitted by § 1983."[27]

Similarly, Plaintiffs allege that Defendant Lori Allen, the Payne County Court Clerk, "participated in or failed to correct filing disputes, notice irregularities, record-integrity problems, docket-access problems, and maintenance issues" connected to certain state-court proceedings Plaintiffs were presumably involved in.[28] The constitutional rights implicated include "due process, ability to preserve objections and obtain review, and meaningful opportunity to preserve objections."[29] Plaintiffs request "declaratory and prospective…relief" and damages "to the extent allowed by law."[30] Likewise, they allege that Defendant Brenda Nipp, an Assistant District Attorney for Payne County, "participated in continuation of deprived and related proceedings despite unresolved constitutional

---

[25] *Id.* ¶¶ 200–01.

[26] *Id.* ¶ 203.

[27] *Id.* ¶ 205.

[28] *Id.* ¶ 214.

[29] *Id.* ¶ 216.

[30] *Id.* ¶ 218.

objections, contested evidentiary foundations, discovery disputes, preservation disputes, and DHS-medical allegations."[31] The constitutional rights implicated "include Fourteenth Amendment due process, familial association, meaningful review access, and First Amendment retaliation."[32] Plaintiffs request "declaratory and prospective relief," and damages "for conduct…outside absolute prosecutorial immunity."[33] A similar pattern obtains for each named Defendant and John Does 1-20.

The Complaint also includes a separate section which includes eight different "Counts for Relief." All of the Counts list various Defendants alleged to have violated a certain right belonging to Plaintiffs. Each Count also states that it "incorporates all prior paragraphs," and then recites in conclusory fashion various theories of liability. For instance, Count I is entitled "Fourth Amendment: Unreasonable Seizure (42 U.S.C § 1983)."[34] Below that, the Complaint lists "Caitlin Fishburn, Elizabeth Henninger, Tomm Edwards, John Kuhn, Payne County, Payne County Sheriff's Office, and John Does 1-20."[35] It then states "Plaintiffs incorporate all prior paragraphs. The seizure of Plaintiffs' children without a warrant, without exigent circumstances, and without a prior individualized judicial finding violated Plaintiffs' rights under the Fourth Amendment. Each named Defendant contributed to this seizure through direct participation,

---

[31] *Id.* ¶ 227.

[32] *Id.* ¶ 230.

[33] *Id.* ¶ 232.

[34] *Id.* at 64–65.

[35] *Id.*

authorization, ratification, or deliberate indifference."[36] Rather than listing individual Defendants, Counts II and III are alleged against "each Defendant identified in the defendant-specific allegations above to the extent that Defendant personally participated in, caused, ratified, supervised, or jointly participated in the deprivation alleged in this Count."[37] Count IV also lists "related state actors" as Defendants, without specifying to whom it is referring.[38]

Finally, the Proposed Amended Complaint includes separate sections where Plaintiffs state that they seek various forms of relief against various Defendants. In particular, they seek "compensatory damages against all individual Defendants"; "punitive damages against all individual Defendants whose conduct was motivated by evil intent, was recklessly or callously indifferent to Plaintiffs' federally protected rights, or reflected a knowing disregard for constitutional requirements"; and attorneys' fees.[39] Plaintiffs also seek declaratory judgments that Defendants violated their constitutional rights and various forms of prospective relief, including orders "requiring OKDHS to provide individualized judicial findings before imposing or maintaining communication or visitation restrictions on [them]"; "prohibiting enforcement of any filing restrictions against [their] pro se filings" in the ongoing state-court proceedings; "requiring preservation of all records, bodycam footage, dispatch records, agency communications, medical records, and electronic records

---

[36] *Id.*

[37] *Id.* at 65.

[38] *Id.* at 66.

[39] *Id.* at 69–70.

relevant to this action"; and "requiring Payne County Court Clerk personnel to maintain accurate records, correct known record errors, and provide Plaintiffs meaningful access to docket materials and filed documents."[40]

Plaintiffs also filed a "Revised Proposed Consolidated Amended Complaint" (Dkt. 96-1). They state that this "revised version" of the Proposed Amended Complaint "supersedes" the previous version "in its entirety," but then state that it makes only certain revisions while "all other content" of the Proposed Amended Complaint "is unchanged and incorporated herein[.]"[41] Accordingly, the Court construes this filing as a supplement to the Proposed Amended Complaint.

Essentially, Plaintiffs' supplemental allegations make out an additional claim for relief under the Indian Child Welfare Act ("ICWA"). Plaintiffs allege that their "child or children at issue in" the state-court proceedings have "documented Native American ancestral heritage established through DNA evidence and genealogical records," although they "do not allege confirmed tribal membership at this time."[42] They allege that Defendants ODKHS, Fishburn, Vaughn, Henninger, and Hickey "had reason to know of the children's Native American ancestry" and failed to conduct a mandatory inquiry into the child's Indian status as required by the ICWA and its implementing regulations.[43]

[40] *Id.* at 70–71.

[41] Notice of Filing (Dkt. 96), at 2.

[42] Revised Proposed Am. Compl. (Dkt. 96-1), at 2.

[43] *Id.* at 2–3.

Defendants' failure to conduct this inquiry allegedly deprived Plaintiffs of certain benefits, including "heightened evidentiary standards" and "placement preferences."[44] Plaintiffs state that they seek "declaratory and prospective injunctive relief requiring OKDHS and its agents to immediately conduct the mandatory ICWA inquiry" and to "comply with all requirements of the [ICWA]…in all ongoing and future proceedings affecting Plaintiffs' children."[45]

## II. The Proposed Amended Complaint's deficiencies

In this Court's May 4, 2026 Order, the Court outlined three deficiencies with Plaintiffs' Complaint. In particular, that it (1) precluded any analysis into abstention, (2) made overbroad and indeterminate requests for injunctive relief, and (3) failed to "tie specific facts to specific causes of action."[46] The Court will address the sufficiency of the Proposed Amended Complaint by examining whether its allegations have adequately cured each deficiency in turn.

To allow the Court to adequately address its own jurisdiction and whether abstention doctrines apply, the Court directed Plaintiffs to "include sufficient factual detail" regarding relevant state-court proceedings, "including their status and nature."[47] The Proposed Amended Complaint includes scant details about the state-court proceedings. For instance, Plaintiffs provide the docket numbers for these proceedings and explain that Judges Ochs

---

[44] *Id.*

[45] *Id.* at 8.

[46] May 4, 2026 Order (Dkt. 91), at 11–12.

[47] *Id.* at 15–17.

and Worthington presided over them, but do not explain which court these proceedings took place in, how these proceedings affected them, which proceedings have concluded and which remain ongoing, and what specific actions each Defendant took at or in regard to these proceedings. Plaintiffs refer extensively to the existence of pre-filing restrictions, docket-access issues, discovery disputes, record errors, and preservation of objection issues, among other things. But nowhere do they inform the Court what pre-filing restrictions were instituted against them, what court-access issues they encountered, what disputes about discovery were at issue, what record errors were made, and what objections were made and how or why they were not preserved. Various Defendants are alleged to have been "involved" in or "participated" in these proceedings and the issues that Plaintiffs encountered at them, but the Court is left entirely in the dark as to how. Because Plaintiffs have not provided sufficient detail to allow this Court to undertake a considered assessment of its own jurisdiction, they have failed to cure this deficiency.

Next, the Court directed Plaintiffs to "connect each request for injunctive relief to a specific Defendant" and avoid overbroad or indeterminate requests for relief.[48] Plaintiffs largely responded by including requests for various forms of relief as to each Defendant in a Defendant-specific factual subsection, while attempting to avoid breadth and indeterminacy in the same manner they attempted to avoid immunity and abstention issues, e.g., requesting relief "to the extent permitted by § 1983,"[49] or "prospective relief…to the

[48] *Id.* at 14–15.

[49] Proposed Am. Compl. (Dkt. 94-1) ¶ 205.

extent permitted under Ex parte Young or other applicable law."[50] Plaintiffs have also included similar requests for various forms of relief on pages 2 and 3 that they plead broadly against "[j]udicial Defendants," "[p]rosecutorial Defendants," "[p]rivate Defendants," and "[e]ntity Defendants," "to the extent" various doctrines do or do not apply.[51] Absent from these Defendant-specific requests is any clarity regarding whether Plaintiffs allege each form of relief is "permitted" under § 1983 or other applicable law. But Plaintiffs cannot shift the responsibility onto the Court and Defendants to sift through the allegations 400-plus paragraphs and construct theories of liability under § 1983 or other applicable law for each Defendant that are premised on particular facts. Plaintiffs also do not explain the specific conduct of each Defendant seek to restrict or compel, and include several requests for injunctive relief that are not tailored to any specific Defendant or group of Defendants, such as a request that the Court "[o]rder meaningful access to sealed records, docket materials, and filed documents to the extent necessary to protect Plaintiffs' constitutional rights."[52] Plaintiffs have therefore failed to cure this deficiency as well.

Lastly, the Court directed Plaintiffs to "tie specific facts to specific causes of action."[53] For the same reasons outlined above, while Plaintiffs have alleged specific causes of action against specific Defendants, the Court is still left in the dark as to the exact acts or omissions committed by each Defendant that forms the basis for each cause of

---

[50] *Id.* ¶ 261.

[51] *Id.* at 2–3.

[52] *Id.* at 72.

[53] May 4, 2026 Order (Dkt. 91), at 11–12.

action, and when it occurred. For instance, they allege that Defendant Fishburn "initiated, advanced, supplied, or relied upon DHS referral information…and custody-related communications that became part of the deprived and criminal proceedings," that she "instructed Plaintiff that Plaintiff could not remove [her] child from the state despite disputed lawful authority restricting custody," and that she "supplied or contributed information to law enforcement and other actors that became part of the probable-cause and deprivation narrative."[54] The "constitutional rights implicated include due process, parental association, Fourth Amendment protections, and procedural review access."[55] But they do not explain what information or communications Fishburn relied on, what purportedly lawful authority restricting their custody was disputed, what information she supplied to law enforcement, when any of this happened, or how any of it amounts to a violation of Plaintiffs' Fourth and Fourteenth Amendment rights. Plaintiffs also include allegations against "related state actors," without explaining who those are, and allegations against other unknown Defendants "to the extent" they "personally participated in, caused, ratified, supervised, or jointly participated in the deprivation alleged in" Counts II and III.[56] Accordingly, Plaintiffs have failed to cure all three deficiencies.

## III. Leave to amend

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave when justice so courts." However, denying leave to amend is justified "upon a showing of undue

---

[54] Proposed Am. Compl. (Dkt. 94-1), at ¶¶ 263–65.

[55] *Id.* at ¶ 267.

[56] *Id.* at 65.

delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[57]

Plaintiffs have failed to cure the deficiencies in their previous Complaints. Their failure to cure these deficiencies has "prejudiced the defendants by causing delay and mounting attorney's fees."[58] Plaintiffs' inclusion of specific subsections outlining the factual and legal allegations against each Defendant mark an improvement over the previous Complaints, but still require extensive effort to parse through because of the sheer length and prolixity of the allegations. "In its sheer length," Plaintiffs have "made [their] complaint unintelligible by scattering and concealing in a morass of irrelevancies the few allegations that matter."[59] "The Tenth Circuit has long recognized that inordinately long pleadings . . . are a strain on both other litigants and the courts."[60]

Additionally, the Tenth Circuit has explained that the culpability of a pro se party in not complying with pleading requirements increases with the helpfulness and clarity a district court provides in explaining the requirements of a well-pleaded complaint before a pro se party amends his complaint.[61] This Court's May 4, 2026 Order (Dkt. 91) provided Plaintiffs with extensive notice and clarification regarding the deficiencies identified in

---

[57] *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted).

[58] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

[59] *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (citation and internal quotation marks omitted).

[60] *Gabriel v. Melton Truck Lines*, No. 21-CV-493-JFH-SH, 2022 WL 3401949, at *4 (N.D. Okla. Aug. 16, 2022) (citation omitted).

[61] *Nasious*, 492 F.3d at 1163.

their previous Complaints. The Court also provided direct and specific instructions on how Plaintiffs could cure those deficiencies. Rather than attempt to resolve these deficiencies through specific factual allegations and requests for relief, Plaintiffs obscured the nature of their claims by adding superfluity without detail.

Plaintiffs' ICWA claim comes closer to providing sufficient factual detail to identify the alleged conduct forming the basis of the claim as to each Defendant. Regardless, it cannot survive independently of Plaintiffs' other claims because Plaintiffs have still not provided adequate detail regarding the underlying state-court proceedings to allow this Court to assess the applicability of abstention doctrines. Accordingly, denial of further leave to amend is appropriate.

## IV. John and Chanda Smiths' Requests for Attorney's Fees

In both their Response (Dkt. 101) and Motion (Dkt. 102), John and Chanda Smith request an award of attorney's fees under 42 U.S.C. § 1988(b). A prevailing defendant in an action under § 1983 may recover attorney's fees only upon a finding that the plaintiff's claims were "frivolous, unreasonable, or without foundation."[62] "In determining whether a claim is frivolous, unreasonable or groundless, a district court must avoid *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[63] Although Plaintiffs have failed to comply with Rule 8(a) despite receiving an opportunity to amend, the Court has not

---

[62] *See Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (citation omitted);

[63] *Thorpe v. Ancell*, 367 F. App'x 914, 920 (10th Cir. 2010) (emphasis in original) (citation and internal quotation marks omitted).

determined that their underlying claims were frivolous, unreasonable, or without foundation. An award of attorney's fees is therefore unwarranted at this time.

## V. John and Chanda Smith's Motion for Pre-Filing Restrictions

John and Chanda Smith also ask the Court to declare Plaintiffs vexatious litigators and impose certain pre-filing restrictions on them. Federal courts possess inherent authority to impose carefully tailored filing restrictions on abusive litigants.[64] However, "[l]itigiousness alone will not support an injunction restricting filing activities."[65] Such restrictions must be supported by an adequate record of abusive litigation and appropriately tailored to the misconduct identified.[66] Although Plaintiffs have filed numerous deficient pleadings and motions, their filings all concern the same underlying child-custody controversy, and the Court has addressed these deficiencies through ordinary procedural mechanisms, including dismissal of their Complaints and denial of further leave to amend. Defendants have not established a sufficiently lengthy and abusive history of litigation to justify restricting their ability to initiate future actions. The imposition of pre-filing restrictions is therefore unwarranted at this time, but a more detailed record establishing abusive litigation against John and Chanda Smith may persuade the Court to impose pre-filing restrictions on any future filings against them.

## *Conclusion*

---

64 *Tripati v. Beaman*, 878 F.2d 351, 352–54 (10th Cir. 1989).

65 *Id.* at 353 (citations omitted)

66 *Id.*; *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007).

Accordingly, Plaintiffs' Motion for Leave to Amend (Dkt. 94) is **DENIED**. Defendants John and Chanda Smiths' requests for attorney fees (Dkts. 101, 102) and Motion to Impose Pre-Filing Restrictions (Dkt. 102) are **DENIED** without prejudice.

**IT IS SO ORDERED** this 20th day of November 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE